## In re Anonymous No. 53 D.B. 75

Disciplinary Board Docket no. 53 D.B. 75.

To The Honorable Chief Justice and Justices of the Supreme Court of Pennsyvania

JOHNSON, *Member,* November 25, 1980 — Pursuant to Pa.R.D.E. 218(c)(5) the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

July 30, 1975, petitioner was convicted of a felony, three counts of mail fraud in the United States District Court for the Western District of Pennsylvania, and was sentenced to three years imprisonment on each count to run concurrently and ordered to pay a total fine of $3,000. On August 13, 1975 your honorable court entered an order suspending petitioner from the practice of law pursuant to Pa.R.D.E. 17-14(a) (now Rule 214(a)), and further ordered that the matter be referred to the Disciplinary Board of the Supreme Court of Pennsylvania pursuant to Pa.R.D.E. 17-14(c) (now Rule 214(c)), for the purpose of determining the extent of the final discipline to be imposed.

Upon appeal by petitioner, the judgment and

order of the District Court was affirmed by the United States Court of Appeals, Third Circuit, and on or about November 29, 1976, the Supreme Court of the United States denied certiorari. After serving two months confinement petitioner was released from Allenwood Federal Prison Camp on or about February 9, 1977.

Petitioner having exhausted his appeal remedies the prescribed hearing to determine the final discipline to be imposed was held on March 16, 1977 by hearing committee [4:08]. After review of the hearing committee report the board recommended to your honorable court petitioner be suspended for a period of 33 months. On December 13, 1977 your honorable court rejected the recommendation of the board and suspended petitioner from the practice of law for a period of four years, such suspension to be made retroactive to the order of suspension of your court dated August 13, 1975.

Petitioner filed with your honorable court a petition to vacate the order of December 13, 1977, request for review and substituted order. September 26, 1978, the petition was denied. However, petitioner was granted permission to file a petition for reinstatement and the board was directed to process and report thereon before August 1, 1979.

October 19, 1978, petition for reinstatement and reinstatement questionnaire and answers were filed by petitioner. The matter was referred to a hearing committee for a reinstatement hearing, which hearing was held on December 7, 1978. On March 16, 1979, report of the said hearing committee, dated March 14, 1979, was filed recommending petitioner be reinstated.

On March 14, 1979, petitioner was apprehended at the Girl's Dormitory of [ ] University, [ ], Pa. On March 15, 1979 the [ ] University Police De-

partment filed a criminal complaint against petitioner alleging violations of the Crimes Code, 18 Pa.C.S.A. §3503(b) (defiant trespass), and 18 Pa.C.S.A. §5901 (open lewdness). The matter of the arrest first came to the attention of Disciplinary Counsel through an article appearing in a local newspaper on April 18, 1979. Following additional investigation, Disciplinary Counsel on May 7, 1979 filed a petition to reopen the record, which was not opposed by petitioner. The petition to reopen was granted and the matter was remanded to a hearing committee for the reception of further evidence. Hearing was held June 11, 1979.

A second petition to reopen the record was filed August 10, 1979 as a result of a further complaint being lodged against petitioner for alleged terroristic threats and harassment by communications, and petitioner's discharge from employment. The date set for the second reopened reinstatement hearing was, upon motion of petitioner, postponed, and subsequently held on February 22, 1980.

Following the hearing of February 22, 1980, petitioner's brief in support of the petition for reinstatement was filed on April 7, 1980. Assistant Disciplinary Counsel filed his brief in response to petitioner's brief on April 23, 1980. Following a review of the testimony and consideration of the briefs filed, the hearing committee filed a supplemental report on July 14, 1980 recommending that the board not recommend the reinstatement of petitioner, which was a reversal of its prior recommendation. After a request for extension of time which was granted, counsel for petitioner filed a brief on exceptions to the report of hearing committee on August 12, 1980 and requested oral argument. August 26, 1980 Office of Disciplinary Counsel filed its brief opposing exceptions and on Sep-

tember 11, 1980 oral argument was heard by a panel of the Disciplinary Board consisting of Charles V. Henry, III, Esq., Dennis C. Harrington, Esq., and Herbert J. Johnson, Jr., Esq., chairman of the panel.

Throughout all of the proceedings petitioner has been represented by counsel.

## II. DISCUSSION

The consideration of a petition for reinstatement is governed by the dictates of Pa.R.D.E. 218(3)(i), which provides as follows:

"A disbarred or suspended attorney shall have the burden of demonstrating by clear and convincing evidence that such person has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that the resumption of the practice of law within the Commonwealth by such person will be neither detrimental to the intregrity and standing of the bar or the administration of justice nor subversive to the public interest."

Consequently, petitioner has the burden of demonstrating by clear and convincing evidence not only that he has the moral qualifications, competency and learning in law required for admission to practice in this Commonwealth, but also that the resumption of practice by him will be neither detrimental to the integrity and standing of the Bar or the administration of justice, nor subversive to the public interest.

The hearing committee has found petitioner has demonstrated his technical competency and learning in the law. Petitioner received his B.A. Degree in Political Science from Duquesne University in 1965 and his J.D. Degree from Duquesne in 1968.

Petitioner was admitted to the Bar in November, 1968, while on active duty with the U.S. Army. Following his return from Saigon in 1970, and an honorable discharge, he entered the practice of law in September, 1970 with an established [ ] law firm. In May, 1972 he became a sole practitioner until two years later when he associated with [ ] which association continued until August, 1975 when petitioner was suspended from the practice of law. In 1974, petitioner received the nomination of both major political parties to a seat in the Pennsylvania House of Representatives and was elected in November of that year.

During his two months stay at the Allenwood Federal Prison Camp, petitioner was engaged in legal counseling in the Prison Law Library under the auspices and direction of the prison authorities. Following his release from Allenwood, petitioner conducted investigations into both civil and criminal matters for a number of local law firms, has engaged in paralegal work such as drafting petitions, legal research and preparation of questions for use in cross-examination, and has been employed by a consulting firm which is engaged in the security and loss prevention business.

During the period of his suspension, petitioner has maintained the constant habit of reading advance sheets and other legal publications and has had regular access to the law library of at least one of the law firms which has employed him as an investigator.

The board concludes petitioner has met the burden of proof placed upon him concerning his competency and learning in the law required for admission to practice in this Commonwealth.

What is at issue in this matter is a question of whether petitioner has met the burden of dem-

onstrating by clear and convincing evidence that he has the moral qualifications and that the resumption of practice by him will be neither detrimental to the integrity and standing of the Bar or the administration of justice, nor subversive of the public interest.

In considering whether or not this burden has been met, we turn to the incident of March 14, 1979 at the Girl's Dormitory of [ ] University and the testimony of June 11, 1979. At 1:26 a.m. on that date officer [A] and Sergeant [B] of the [ ] University Police were called to [ ] Hall, a woman's dormitory, where they found petitioner outside the dormitory leaning against his car. When questioned by the officers, petitioner told them he was looking for [C]. A radio check ascertained that this person did not live on the [ ] campus. Officer [A] made known this fact to petitioner who then said he had made a mistake and that "he was working on a case and [C] was a witness to a murder case." Petitioner also told the police he was a lawyer. While this interrogation was taking place, the [ ] Campus Police were joined by two [ ] City Police Officers as a backup. The City Police officers after talking to petitioner, recognized and verified the identification he had furnished to the Campus Police. Subsequently, he was permitted by the police to leave on his own and drove off in his automobile. Officer [A] further testified that he had made previous arrests in regard to excessive consumption of alcohol, and that petitioner did not appear to be intoxicated; that he did not smell alcohol on petitioner's breath.

Coeds [D] and [E] lived on the second floor of [ ] Hall on March 14, 1979. Early that morning both were told by another resident that someone was trying to get into the building. They went to the first

floor lounge and looked out the window. A man they identified as petitioner stood outside making obscene gestures with his body and motioning for the young women to come outside. While looking out the window, [D] testified as follows concerning the man identified as petitioner: "The man, he started to pull down the zipper of his pants, and with that I turned away after he started to open up, you know, after he pulled down the zipper, after he started to open up his pants. I turned away and went down the hall and called." [E] corroborated this testimony. [D] called the police.

The testimony of Officer [A], previously referred to, that petitioner did not appear to be intoxicated and that he did not smell alcohol on his breath, together with the fact that the four police officers, two [ ] University Police and two [ ] City Police, after talking to petitioner, permitted him to drive off in his own automobile, is considered by the board to be significant in light of petitioner's subsequent explanation that he was so intoxicated on March 14, 1979 that he had no recollection of the incident and consequently, could not deny the incident occurred.

The following day, March 15, 1979, the [ ] University Police Department filed a criminal complaint against petitioner, alleging charges of defiant trespass and open lewdness. Subsequently, through plea bargaining, the original charges were dismissed upon petitioner's agreement to plead guilty to violations of disorderly conduct and public drunkenness. Upon petitioner's plea being entered, fines and costs were imposed in regard to each violation.

In explanation of this incident at the [ ] Dormitory, petitioner testified that he had been drinking heavily throughout the late afternoon and evening,

most of the time in the company of [F] and that he remembered nothing of the incident at the University, in fact, he testified he knew nothing about it until early April, 1979 when he received a call to ascertain if he was going to appear for his preliminary hearing. In corroboration of his testimony concerning his drinking, he offered the testimony of his friend [F], an attorney. [F] testified that he met petitioner at a restaurant downtown at approximately 5:30 or 6:00 p.m. on March 13, 1979. They stayed there until 9:30 or 10:00 p.m. during which time petitioner "was drinking pretty heavily, I remember he was drinking Scotch without any mix or any soda or anything like that." [F] and petitioner then went in petitioner's automobile to another restaurant for dinner where they had one round of drinks and two bottles of wine. They stayed at the restaurant until they finished dinner around 11:30, 12:00 or 12:30. After dinner petitioner drove [F] home, which according to [F's] testimony "so, it would probably be a ten, fifteen minute drive."

The board is concerned with the fact that petitioner takes the position his whole problem was one of excessive consumption of alcohol and fails to recognize the underlying problem involved in his exposure at the girl's dormitory. He testified that since the incident happened, he has joined Alcoholics Anonymous, but offered no supporting testimony other than his own. He distinguishes the types of alcoholic addiction and testifies that he can control his drinking and in fact, has not had a drink since March 14, 1979 because he recognizes he cannot drink due to blackouts. There would appear to be an inconsistency in his testimony that he had not had a drink since the date of the campus incident on March 14, when considered in the light of his testimony that he did not know about the cam-

pus incident until early April when called by the magistrate.

Petitioner went to Dr. [G], on May 21, 1979 and at the hearing offered the testimony of Dr. [G]. It was Dr. [G's] conclusion that petitioner had ingested toxic alcohol from about 4:30 to about 12:30 at night and that the toxic effect of the alcohol stripped petitioner of his normal defenses. It was the testimony of Dr. [G] that he would think it unlikely for incidents like the "campus incident" to happen again if there were no additional drinking. Dr. [G] concluded that it would be unlikely that petitioner would drink to excess but rather that he probably would not drink at all. It was apparent from the testimony of [G], his testimony was based upon the information furnished to him by petitioner.

Petitioner had office visits with Dr. [G] on June 13, 18, and 25, 1979. Further consultation with Dr. [G] was left to the discretion of petitioner and the testimony indicates petitioner has sought no further help from Dr. [G] down to the date of the hearing held February 22, 1980.

In addition to the campus incident, a second petition to reopen the record was based upon (1) a claim being lodged against petitioner for alleged terroristic threats and harassment by communications made by one [H] and (2) an indication from an [I] who testified on behalf of petitioner at his first hearing as his employer concerning the subsequent discharge of petitioner.

With regard to the alleged terroristic threats and harassment by communications the alleged victim, [H], when called to testify before the hearing committee, refused to testify invoking the Fifth Amendment as her reason for not testifying. The witness was excused by the hearing committee and

consequently, the allegation is unsupported and was not considered by the board in reaching its conclusion.

Further testimony was offered by petitioner's former employer, [I], who testified on petitioner's behalf at the first reinstatement hearing. He testified that since that hearing he had discharged petitioner for alleged discrepancy between two checking accounts of his company. Petitioner in rebuttal of this testimony offered as a witness, [J], the estranged wife of [I], who testified that petitioner was authorized to sign checks on one or both of the company accounts. However, it appeared from her further testimony she was either unknowledgeable or mistaken as to who was authorized to sign checks for the corporation. Petitioner himself testified that he did not have authority to sign checks other than for the company's payroll account. This incident alone would not persuade the board to recommend the denial of petitioner's petition for reinstatement, but nonetheless it must be taken into consideration in light of all the circumstances.

## FINDINGS OF FACT

The board makes the following findings of fact:

1. Petitioner, 37 years of age, is married and the father of five children, ages 10 to 2. He was admitted to the Bar in November, 1968.

2. Following a conviction of a felony, three counts of mail fraud, petitioner was suspended from the practice of law by order of the Supreme Court dated December 13, 1977, for four years, retroactive to August 13, 1975.

3. Since his suspension petitioner worked as a paralegal and investigator and has demonstrated

his competency and learning in the law required for admission to practice of law in this Commonwealth.

4. During the early morning hours of March 14, 1979, petitioner was outside of a girls' dormitory at [ ] University where he attracted the attention of the residents to himself, made obscene gestures to the young women, waved to them to join him, pulled down the zipper of his pants and at least started to open his pants to expose himself.

5. When interrogated by police as to his reason for being on the Campus, petitioner lied concerning the name of a resident he was looking for and later stated he was a lawyer working on a case.

6. As a result of his conduct at the girls' dormitory of [ ] University, peritioner was on March 15, 1977 charged with violation of the Crimes Code, 18 Pa.C.S.A. §5901 (open lewdness), and §3503 (defiant trespass). By plea bargaining these charges were discharged upon petitioner pleading guilty to lesser charges of disorderly conduct and intoxication, upon which he paid fine and costs.

7. Petitioner at the time of the incident at [ ] University did not appear to the police officer questioning him, to be intoxicated, nor did the officer smell alcohol on his breath.

8. Petitioner has failed to offer a logical or satisfactory explanation for his conduct leading to his arrest on March 15, 1979.

9. Petitioner has failed to meet the burden of demonstrating by clear and convincing evidence that he has the moral qualifications required for admission to practice in this Commonwealth.

10. Petitioner has failed to meet the burden of demonstrating by clear and convincing evidence that the resumption of practice by him will be neither detrimental to the integrity and standing of

the Bar or the administration of justice nor subversive to the public interest.

## IV. CONCLUSION

The respected hearing committee after hearing extensive testimony in this mattter and having the benefit of their observation of petitioner during his testimony, reached the conclusion petitioner had failed to meet the burden of proof that he possesses the moral qualifications to be readmitted to the practice of law.

The board has carefully considered the transcripts of the testimony offered in this matter, has considered the brief on exceptions filed by learned counsel on behalf of petitioner and has had the benefit of oral argument held before a panel of the board. Not only does the board concur in the conclusion of the hearing committee that petitioner has failed to meet the burden of showing by clear and convincing evidence that he has the moral qualifications to be readmitted to the practice of law, but also we must conclude that he has failed to meet the burden of demonstrating by clear and convincing evidence that the resumption of practice by him will be neither detrimental to the integrity and standing of the Bar or the administration of justice, nor subversive to the public interest. If competency and learning in law were the only criterion, our conclusion would be otherwise. However, it is the opinion of this board that to recommend petitioner's reinstatement would violate the dictates of Pa.R.D.E. 218(3)(i).

## RECOMMENDATION

The Disciplinary Board, therefore, recommends to this honorable court that the petition for

reinstatement be denied and that petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement. A statement of such expenses in the amount of $843.05 is appended to this report.

Mr. Pearlstine did not participate in the adjudication.

## ORDER

O'BRIEN, *C.J.*, And now, January 21, 1981, recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated November 25, 1980, is accepted and the petition for reinstatement is denied.

The expenses incurred by the board in the investigation and processing of the petition for reinstatement shall be paid by respondent.